IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACEY MANNO, et al.**, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **REINBOW'S END, INC. et al.**, | : | NO. 24-1232 |
| Defendants. | : | |
| | : | |

**OPINION**

SCOTT W. REID  August 4, 2025
UNITED STATES MAGISTRATE JUDGE

I.     INTRODUCTION

Presently before the Court is the Motion for Leave to File an Amended Complaint (ECF 32), filed by Plaintiffs Jacey Manno and Jill Reilley (hereafter, "Plaintiffs"). I will deny Plaintiffs' motion for undue delay.

II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this action on March 22, 2024 when they filed a Complaint alleging claims of violations of the Fair Labor Standards Act ("FLSA"), Pennsylvania Minimum Wage Act ("MWA"), Pennsylvania Wage Payment and Collection Law ("WPCL"), and Wrongful Discharge (Plaintiff Reilly only). ECF 1. Plaintiffs were employed by Defendants between 2017 and 2023. ECF 1 at 8-10.[1] Plaintiffs both reported to Defendant John Muldoon ("Muldoon"), the owner of Defendant Reinbow's End, Inc. ("Reinbow's End"). ECF 1 at 8, 10. Reinbow's End is a horse farm in Chester County, Pennsylvania.

Plaintiffs claim that Defendants failed and refused to pay them overtime compensation and applicable minimum wage. ECF 1 at 9, 11. Plaintiffs also allege Manno was refused compensation for any work she performed that was not at a horse show. ECF 1 at 9. Plaintiff Reilley has an additional a claim of

---

[1] Plaintiff Manno was employed between January 2018 and October 2, 2023 as Groom and Social Media Manager. ECF 1 at 8. Plaintiff Reilley was employed between December 3, 2017 and October 2, 2023 as Groom, Groom Show Manager, and Assistant Trainer. ECF 1 at 10.

1

Wrongful Discharge, related to alleged retaliation for a potential workers' compensation claim. ECF 1 at 11, 15.

Defendants answered the complaint on May 30, 2024, including several affirmative defenses and counterclaims of Breach of Contract against Reilley and Unjust Enrichment against both Plaintiffs. ECF 9. The counterclaims relate to a contract for sale of a horse known as "Badger." ECF 9 at 10. Defendants allege that in 2017, Reinbow's End sold Badger to Reilley for personal use and use by her daughter, Manno. ECF 9 at 9. The purchase price was $125,000. *Id.* Plaintiffs made a payment of $15,000, with the rest to be paid over time. *Id.* Defendants allege that no further payments were made. *Id.* Badger has resided at Reinbow's End since 2017, with Plaintiffs bringing Badger to various horse competitions throughout the years through Reinbow's End. *Id.* The parties dispute whether Reinbow's End paid fees and costs of care for the horse. *Id.* Defendants state that after Muldoon demanded payment of the remainder of the price for Badger in October, 2023, Reilley and Manno refused to pay and terminated their employment with Reinbow's End. *Id.* at 9, 10.

On July 5, 2024, Plaintiffs filed an Answer to the Answer, addressing Defendants' counterclaims. ECF 12. Plaintiffs dispute the purchase price for Badger. ECF 12 at 3. Plaintiffs also dispute that Defendants ever demanded the remainder of payment due and state that Defendants withheld the horse after transferring ownership to Reilley for several years. ECF 12 at 4.

On October 9, 2024, the parties consented to Magistrate jurisdiction, and the case was reassigned from the Honorable Gerald J. Pappert to the undersigned. ECF 19. Then, following a scheduling conference, the Court filed an Amended Scheduling Order, but did not set a deadline for the parties to seek to amend pleadings or add parties. ECF 22. The parties have since requested multiple extensions to the case management deadlines, (*see* ECFs 23, 26, 29, 30), and the Court has filed several Amended Scheduling Orders, (ECFs 25, 27, 28, 35).

Now, after over a year of litigation and active settlement negotiations, Plaintiffs seek to add a claim of Breach of Contract[2] to their original complaint. ECF 32. Defendants oppose the amendment, arguing that Plaintiffs' motion should be denied because of undue delay, bad faith, and dilatory motive. ECF 33 at 3. The motion is now ripe for disposition.

III.    RELEVANT LEGAL PRINCIPLES

Federal Rule of Civil Procedure 15 provides that courts should "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is left to the "sound discretion of the district judge." *Gay v. Petsock*, 917 F.2d 768, 772 (3d Cir. 1990). A court may deny leave to amend if: "(1) the moving party has [exhibited] undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

IV.    DISCUSSION

The party opposing the motion must "do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the … amendments been timely.'" *Bectel v. Robinson,* 886 F.2d 644, 652 (3d Cir. 1989)(citation omitted). Here, Defendants do not even "claim prejudice." *Id.* In fact, they do not mention it at all in their Opposition to Plaintiffs' motion. "Absent undue or substantial prejudice ... [denial must] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Lundy v. Adamar of N.J., Inc.,* 34 F.3d 1173, 1196 (3d Cir. 1994)). Thus, the undersigned omits an analysis of the prejudicial effect of the amendment and will first turn to undue delay.

---

[2] The breach of contract claim in the proposed Amended Complaint is alleged by Plaintiff Reilley, only. ECF 32-2 at 13.

3

A.  *Undue Delay*

Delay alone is insufficient to justify denying a party's motion for leave to amend its pleading in the Third Circuit. *AMS Constr. Co. v. Reliance Ins. Co.*, 2006 U.S. Dist. LEXIS 46905, *5, 2006 WL 196733 (citing *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). "The delay must either be undue, such that it places "an unwarranted burden on the court," or it must be prejudicial, such that it places "an unfair burden on the opposing party."" *Suppertime, LLC v. Frankfield Mgmt.*, LLC, 2025 U.S. Dist. LEXIS 131112 at *6 (citing *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 225 (E.D. Pa. 2012) (internal citations omitted)). "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." *Id.* "Thus, in determining whether delay is undue, a court must 'focus on the movant's reasons for not amending sooner.'" *Suppertime*, LLC, 2025 U.S. Dist. LEXIS 131112 at *6, (citing *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001)). This "includes consideration of whether new information came to light or was available earlier to the moving party," and whether the "movant has had previous opportunities to amend." *Suppertime*, 2025 U.S. Dist. LEXIS 131112 at *6-7 (internal citations omitted).

Here, Plaintiffs' delay in adding this claim is undue and places an unwarranted burden on the Court. Plaintiffs allegedly purchased Badger in 2017. ECF 9 at 9; 12 at 3. The parties dispute the purchase price, but agree Plaintiffs paid $15,000. ECF 9 at 9; 12 at 3. The horse resided at Reinbow's End from 2017 through the end of Plaintiffs' employment with Reinbow's End in 2023 and continued to stay there until Badger's death in June 2025. ECF 12 at 3. At no point between October 2023 and June 2025 was the horse transferred out of Reinbow's End's possession and to Plaintiffs' possession. ECF 12 at 3, ECF 32-1 at 2. Such is the crux of Plaintiffs' amended claim. They seek to add a claim stating that Defendants breached the purchase contract for the horse because they never relinquished the horse to Plaintiffs despite the purchase occurring over eight years ago. ECF 32-1 at 2.

Although Plaintiffs contend that Badger's death led them to pursue a breach of contract claim, such claim could have been filed previously. ECF 32-1 at 2-3. Plaintiffs were not diligent in pursuing this claim as they could have sought relief for a breach of contract at the outset of the lawsuit. *Id.* At the time,

Plaintiffs had parted ways with Defendants five months earlier, and the horse was still residing at Reinbow's End in March 2024 since the purchase in 2017. ECF 32-1 at 2. Plaintiffs believe they were Badger's true owners, and that Defendant was withholding the horse in breach of their purchase contract. ECF 12 at 4. Despite this, Plaintiffs failed to include a breach of contract claim in the original Complaint. Thus, the undersigned must contemplate Plaintiffs' reasons for not amending sooner. *Suppertime,* 2025 U.S. Dist. LEXIS 131112 at *6.

      Plaintiffs state that the progressing litigation and settlement negotiations were halted when news of Badger's death became available to them. ECF 32-1 at 2. Now, in knowing that they will never be able to recover the value of the animal after its death, Plaintiffs seek to recover said value as relief on this claim. *Id.* Indeed, Badger's imminent death was likely unknown at the filing of the lawsuit, but this is not the type of newly discovered evidence that would insulate Plaintiffs from a finding of undue delay in the filing of this motion. Even when Badger was still alive, there was a possibility that Plaintiffs would never gain control of the horse or receive compensation for the value of the horse, since it had already been a significant amount of time since the purchase. At any point before his death, Plaintiffs could have brought a breach of contract claim based on this possibility or the past several years during which they did not retain possession of Badger. Plaintiffs have failed to provide any other reasonable explanation for why they did not move to amend the complaint sooner. As such, the breach of contract claim was available to them at the outset of the lawsuit and Plaintiffs have had over sixteen months to move to amend, yet did not do so.

      At this stage, after the Court has reset the case management deadlines on five occasions per requests made by the parties, largely related to Plaintiffs' counsel's scheduling conflicts, amending the complaint places an unwarranted burden on the Court to delay the case even further. The Court has not been presented with any reasonable explanation for why such extensive delays should be permitted. Thus, the undersigned finds that Plaintiffs' delay in moving to amend their complaint is undue and therefore shall deny the motion.

B.  *Bad Faith and Dilatory Motive*

Although the Court denies Plaintiffs' motion on the basis of undue delay, the undersigned will address Defendants' arguments that Plaintiffs motion is also grounded in bad faith and dilatory motives. These issues require similar evaluations. *Suppertime*, 2025 U.S. Dist. LEXIS 131112 at *7. Regarding demonstrating bad faith, the court must "focus on the plaintiffs' motives for not amending their complaint to assert th[e] claim earlier." *Adams*, 739 F.2d at 868. "However, '[t]he scope of the court's inquiry is…limited to whether the motion to amend *itself* is being made in bad faith, not whether…conduct outside the motion to amend amounts to bad faith.'" *Suppertime*, 2025 U.S. Dist. LEXIS 131112 at *7 (citing *Trueposition, Inc. v. Allen Telecom, Inc.*, 2002 U.S. Dist. LEXIS 12848, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (internal citations omitted)). Delay also can serve as "evidence of bad faith justifying denial of leave to amend," and, if the plaintiff acts "in an effort to prolong litigation,'" "[a] finding of dilatory motive is also justified. *Id*. (citing *Adams*, 739 F.2d at 868 and *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 123 F. Supp. 3d 638, 653 (E.D. Pa. 2015) (citation omitted), *aff'd*, 823 F.3d 184 (3d Cir. 2016)). "Such efforts are apparent when the motion attempts to plead additional information that was previously available, and the plaintiff fails to provide an explanation as to why the information was not included in the original complaint." *Id.* (citing *Maiden Creek Assocs,* 123 F. Supp. 3d at 653).

Defendants attempt to characterize Plaintiffs' delay as bad faith, speculating that Plaintiffs' intention in filing the lawsuit all along was to "drive up litigation costs so that Defendants would capitulate and give up possession of the horse." ECF 33 at 3-4. Although Plaintiffs stated in their motion that Badger's death interrupted settlement negotiations with possession of Badger at the center of the talks, the inquiry for the Court relates only to the motion to amend *itself* being made in bad faith, not whether Plaintiffs conduct throughout litigation amounts to bad faith. *Suppertime*, 2025 U.S. Dist. LEXIS 131112 at *7. There is no evidence that Plaintiffs filed the motion with the *intention* to prolong the litigation, but by failing to move to amend sooner, they have done just that. Plaintiffs motives for delaying amendment for so long is unclear, thus, the undersigned does not find that Plaintiffs acted in bad faith or with dilatory motive in pursuing an amendment to the complaint.

V. CONCLUSION

Plaintiffs could have included a breach of contract claim against Defendants for the purchase contract of the horse Badger at the outset of the lawsuit in March 2024, or attempted to amend the complaint at any point throughout the sixteen months of litigation thereafter prior to this point. Plaintiffs failed to provide any new information or other reasonable explanation for such an excessive delay in the pursuit of this claim. As such, the undersigned finds that the Plaintiffs have exhibited undue delay in the filing of the present motion, and the motion is **DENIED**.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE